IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **DAVID BINDER,** *et al.*, | : | CIVIL ACTION |
|  | : |  |
| Plaintiffs, | : |  |
| v. | : |  |
|  | : |  |
| **PPL CORPORATION,** *et al.*, | : | NO. 5:22-cv-00133-MRP |
|  | : |  |
| Defendants. | : |  |

**Perez, J.**                                                                                                                   **March 12, 2024**

<u>**MEMORANDUM**</u>

    Before the Court is a Motion to Dismiss filed by Defendants PPL Corporation, PPL Services Corporation, Board of Directors of PPL Corporation, Board of Directors of PPL Services Corporation, Employee Benefit Plan Board of PPL Corporation, and LG&E and KU Energy LLC (collectively, "Defendants"). Defendants also separately filed a Request for Judicial Notice for this Court's consideration. For the following reasons, the Court denies the Motion to Dismiss and Request for Judicial Notice.

**I.      BACKGROUND**

    Plaintiffs David B. Binder, George Knebel, Todd A. Messner, Deborah Shobe, Diana Klotz, and William Simmendinger (collectively, "Plaintiffs") are current and former participants in retirement plans (collectively, "the Plan") offered by Defendants. ECF No. 1 ¶¶ 26–30. Plaintiffs bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), alleging that Defendants, as fiduciaries to the Plan, failed to prudently monitor the Plan's investments and remove imprudent ones. *Id.* ¶ 3.

    In 2013, Defendants selected the Northern Trust Focus Funds ("Focus Funds") as the Plan's target date investment option. *Id.* ¶ 101. Plaintiffs allege that, since their inception, the

Focus Funds consistently underperformed alternative funds. *Id.* ¶¶ 104–118. In addition, in 2013, Northern Trust substantially changed the underlying index funds in which the Focus Funds invested, resulting in unusual transaction costs and a high turnover rate. *Id.* ¶ 98–99. In 2015, key management personnel for the Focus Funds left Northern Trust. *Id.* ¶ 110. And, from 2016 to 2020, Defendants selected and caused the Plan to pay higher-cost shares of the Focus Funds when identical, lower-cost shares were available. *Id.* ¶¶ 128–29. According to Plaintiffs, a prudent fiduciary would have replaced the Focus Funds in 2016 and would not have selected the higher-cost shares. *Id.* ¶¶ 142, 149. Despite this, Defendants did not remove the Focus Funds from the Plan until June 30, 2020. *Id.* ¶ 116.

Plaintiffs purport to bring this putative class action on behalf of "All participants and beneficiaries of the PPL Employee Savings Plan, PPL Deferred Savings Plan, PPL Employee Stock Ownership Plan, and the LG&E and KU Savings Plan from January 12, 2016 through the date of judgment, excluding the Defendants." *Id.* ¶ 132. Plaintiffs' Complaint sets forth three Counts, alleging breach of fiduciary duties for: (1) imprudently monitoring and retaining the Focus Funds; (2) selecting and retaining higher-cost shares; and (3) failing to monitor fiduciaries. In response, Defendants filed the instant Motion to Dismiss and Request for Judicial Notice.

## II.     ANALYSIS

### A.     Threshold Issues

The Court begins its analysis with two threshold issues concerning the scope of its review. First, the Court notes that ERISA actions are subject to a statute of repose. Under Section 1113(1), an ERISA action alleging a breach of fiduciary duties "must be filed within six years of 'the date of the last action which constitutes a part of the breach.'" *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S.Ct. 768, 774 (2020) (quoting 29 U.S.C. § 1113(1)). For example, "[a] plaintiff may allege

that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones. In such a case, so long as the alleged breach of the continuing duty occurred within six years of suit, the claim is timely." *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015). This lawsuit was filed on January 12, 2022. Plaintiffs' claims are therefore limited to breaches that occurred from January 12, 2016 and thereafter. Defendants' 2013 selection of the Focus Funds may not constitute a breach in itself, and the Court will disregard allegations that suggest the opposite.

Next, in addition to the Motion to Dismiss briefing, Defendants filed a 13-page brief, requesting the Court take judicial notice of twenty-four exhibits. This request prompted a 10-page response from Plaintiffs. Generally, a court may not consider matters extraneous to the pleadings, but this rule is not without exceptions. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). A court may also consider exhibits attached to the complaint, matters of public record, and undisputedly authentic documents integral to or explicitly relied upon in the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). That consideration, however, "only goes so far." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

Extraneous materials cannot be considered for the truth of their contents. "When the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Id.* Likewise, a public record "may be considered 'not for the truth of its contents, but rather as evidence of the [relevant] information provided.'" *Id.* (citing *Anspach v. City of Philadelphia, Dep't of Pub. Health*, 503 F.3d 256, 273 n.11 (3d Cir. 2007)). Defendants undoubtedly attach the twenty-four exhibits for the truth of the facts therein to support their defense on the merits. However, "[t]he proper place to resolve factual disputes is not on a motion to dismiss, but on a motion for summary judgment." *Doe*, 30 F.4th at 342. "This guidance remains

'even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely.'" *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)). The Court therefore denies Defendants' Request for Judicial Notice.

      **B.**     **Motion to Dismiss**

In reviewing a motion to dismiss, we must construe the Complaint "in the light most favorable to the plaintiff . . . to determine whether it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 325 (3d Cir. 2019) (cleaned up). Plaintiffs bring their claims under 29 U.S.C. § 1104(a)(1). To state such a claim, Plaintiffs must sufficiently allege that "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." *Id.* at 328 (quoting *Leckey v. Stefano*, 501 F.3d 212, 225–26 (3d Cir. 2007)). Defendants' Motion to Dismiss focuses on the second element.

ERISA imposes on plan fiduciaries a duty of prudence, which requires fiduciaries to exercise "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." § 1104(a)(1). In determining whether a fiduciary breached its duty of prudence, "a court assesses a fiduciary's performance by looking at process rather than results, focusing on a fiduciary's conduct in arriving at a decision and asking whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Sweda*, 923 F.3d at 329 (cleaned up). We employ "a holistic approach" during this process, as "[t]he complaint should not be 'parsed piece by piece to determine whether each allegation, in isolation, is plausible.'" *Id.* at 331 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)).

Plaintiffs allege that Defendants breached their fiduciary duties by imprudently monitoring and retaining the Focus Funds, and by imprudently selecting and retaining higher-cost shares of the Focus Funds. Defendants argue that Plaintiffs' Complaint fails to raise a plausible inference of imprudence, thereby warranting dismissal. We address each theory of liability in turn.

1.  **Imprudent Monitoring and Retention of the Focus Funds (Count I)**

"A fiduciary must prudently select investments, and failure to monitor investments and remove imprudent ones may constitute a breach." *Sweda*, 923 F.3d at 328. In Count I, Plaintiffs allege that Defendants imprudently retained the Focus Funds despite their underperformance, high turnover, and the departure of key management personnel. In support, Plaintiffs primarily emphasize the Focus Funds' poor performance as compared to fund alternatives managed by Vanguard, T. Rowe Price, and TIAA-CREF. Defendants move for dismissal of this claim, arguing that these fund alternatives are not meaningful benchmarks for evaluating the Focus Funds.

Defendants' argument largely hinges on application of the "meaningful benchmark" requirement set forth in *Meiners v. Wells Fargo & Co.* 898 F.3d 820, 822 (8th Cir. 2018).[1] While this Court acknowledges that several courts have applied the meaningful benchmark requirement, it also acknowledges that the Court of Appeals for the Third Circuit is not one of them. In *Sweda*, the Third Circuit held that the plaintiffs plausibly alleged a breach of fiduciary duty where the complaint contained "specific comparisons between returns on Plan investment options and readily available alternatives, as well as practices of similarly situated fiduciaries to show what plan administrators 'acting in a like capacity and familiar with such matters would [do] in the conduct of an enterprise of a like character and with like aims.'" 923 F.3d at 332 (quoting 29 U.S.C. §

---

[1] Under *Meiners*, "[t]o show that 'a prudent fiduciary in like circumstances' would have selected a different fund based on the cost or performance of the selected fund, a plaintiff must provide a sound basis for comparison—a meaningful benchmark." *Id.* at 822.

1101(a)(1)(B)). Among other claims, the *Sweda* plaintiffs alleged that the defendants imprudently retained investment options that historically underperformed available alternatives. *Id.* at 331.

*Sweda* credited the plaintiffs' "numerous and specific factual allegations that [the defendants] did not perform [their] fiduciary duties with the level of care, skill, prudence, and diligence to which Plan participants are statutorily entitled." *Id.* at 332. For example, the plaintiffs "alleged that 60% of Plan options underperformed appropriate benchmarks, and that [the defendants] failed to remove underperformers." *Id.* at 331. The plaintiffs also provided a chart comparing plan options with readily available, cheaper options. *Id.* Concluding that the district court erred by "ignor[ing] reasonable inferences supported by the facts alleged" and "drawing inferences in [Defendants'] favor," the Third Circuit reversed the district court's dismissal of the claim. *Id.* at 334 (alterations in original).

As in *Sweda*, the Plaintiffs have "provided substantial circumstantial evidence" of a breach. *Id.* at 332. Plaintiffs alleged that "the Focus Funds remained in the Plan throughout 2016 despite underperforming prudent alternatives by *5% to 11%*," and "[b]etween January of 2015 through the *end of 2017*, the 2030 Focus Fund's three-year trailing performance *underperformed* peer comparators, including Vanguard, TIAA, and T. Rowe Price target date funds, by *between 4% and 17%*." ECF No. 1 ¶ 115 (emphasis in original). Plaintiffs also allege that the 2015 departure of the Focus Funds' manager warranted substantial analysis and potential removal of the Focus Funds due to his "expansive responsibilities . . . over all aspects of the Focus Funds[.]" *Id.* ¶¶ 110–11. Instead, Defendants did not remove the Focus Funds until June 30, 2020, resulting in the Plan losing "$34 million to $55 million relative to what it would have earned by investing in a prudent alternative target-date option." *Id.* ¶ 118; ECF No. 28 at 8.

Defendants' argument that the Vanguard, TIAA, and T. Rowe Price target date funds are not apt comparators is misplaced at the pleadings stage. *See Pinnell v. Teva Pharm. USA, Inc.*, No. 19-5738, 2020 WL 1531870, at *5 (E.D. Pa. Mar. 31, 2020) ("Defendant raises factual questions about whether the alternative funds Plaintiff suggests . . . are apt comparisons—and, therefore, whether the underperformance Plaintiff depicts is an accurate portrait . . . Such questions do not warrant dismissal—to the contrary, they suggest the need for further information from both parties." (quoting *Nicolas v. Trustees of Princeton Univ.*, No. 17-3695, 2017 WL 4455897, at *5 (D.N.J. Sept. 25, 2017)). Accepting the well-pleaded allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that the Complaint sufficiently alleges that Defendants breached their duty of prudence by retaining the Focus Funds.

### 2. Imprudent Retention of Higher-Cost Shares (Count II)

"Fiduciaries must also consider a plan's 'power . . . to obtain favorable investment products, particularly when those products are substantially identical—other than their lower cost—to products the trustee has already selected.'" *Sweda*, 923 F.3d at 328–29 (quoting *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016)). In Count II, Plaintiffs claim that Defendants breached their duty of prudence by selecting higher-cost shares of Plan investment options when identical, lower-cost options were available. Among their arguments in support of dismissal, Defendants reiterate their contention that Plaintiffs use inapt comparators to state their claim. Defendants also challenge Plaintiffs factual allegations as speculative and conclusory.

*Sweda* remains instructive. Similar to the Plaintiffs here, the *Sweda* plaintiffs alleged that the defendants "selected and retained identically managed but higher cost retail class shares." *Sweda*, 923 F.3d at 331. In support, the plaintiffs alleged that the defendants did not leverage the plan size to obtain lower fees, failed to negotiate a more favorable fee structure, declined to solicit

competitive bids, and caused the plan to overpay between $3.8 and $4.75 million in annual recordkeeping fees. *Id.* at 330. In addition, the plaintiffs compared the defendants' actions to the behavior of similarly situated, prudent fiduciaries. *Id.* at 330–31. *Sweda* held that these allegations plausibly alleged imprudence. *Id.* at 332. In so holding, *Sweda* highlighted other appellate court decisions that reached the same conclusion under similar facts. *Id.*; *see also Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014) (affirming a finding of breach of fiduciary duty where a fiduciary failed to adequately leverage plan size to lower costs).

Plaintiffs' allegations are akin to those in *Sweda*. Plaintiffs allege that plans with over $1 billion in assets, like the Plan at issue, can easily obtain the lowest-cost shares available. ECF No. 1 ¶ 127. Despite this bargaining power, the Plan invested in "K" share classes that charged 7 basis points, even though "W" and "J" share classes were available and charged 5 basis points and 2 basis points, respectively. *Id.* ¶ 129. Plaintiffs further allege that Defendants' failure to negotiate, or failure to monitor the availability of lower-cost alternatives, resulted in the Plan paying 150% to 350% more in fees. *Id.* At this preliminary stage, Plaintiffs have set forth sufficient allegations to support a plausible finding of breach. *See Nicolas*, 2017 WL 4455897, at *4 (denying a motion to dismiss where the defendant "fail[ed] to use significant bargaining power to negotiate lower fees" and "fail[ed] to remove two particularly unreasonable funds"). Defendants' arguments to the contrary raise factual questions that are misplaced at this stage of the proceedings.

### 3. Failure to Monitor Fiduciaries (Count III)

The parties agree that Count III is derivative of Counts I and II. In other words, "[p]laintiffs cannot maintain a claim for breach of the duty to monitor . . . absent an underlying breach of the duties imposed under ERISA." *In re Allergan ERISA Lit.*, 975 F.3d 348, 354 n.11 (3d Cir. 2020)

(quoting *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016)). Because Counts I and II survived dismissal, Count III does as well.

### III.   CONCLUSION

When considering a motion to dismiss, we must take the well-pleaded factual allegations as true, apply a holistic approach, and draw all reasonable inferences in Plaintiffs' favor. Following this mandate, the Court denies Defendants' Motion to Dismiss. An appropriate order follows.